UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LYONDELL CHEMICAL COMPANY, et al.,<br><br>         Debtors. | Chapter 11<br><br>Case No. 09-10023 (REG)<br><br>Jointly Administered |
| MILLENNIUM HOLDINGS LLC,<br><br>         Appellant,<br>   -against-<br><br>AKZO NOBEL PAINTS, LLC,<br><br>         Appellee. | Case No. 1:11-cv-00163-MGC |

**REPLY BRIEF OF APPELLANT
MILLENNIUM HOLDINGS LLC**

*On Appeal from the United States Bankruptcy Court
for the Southern District of New York*

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York  10281
Telephone: (212) 504-6000
Facsimile:  (212) 504-6666

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

PIERCE ATWOOD LLP
One Monument Square
Portland, Maine 04101
Telephone: (207) 791-1000
Facsimile:  (207) 791-1350
*Pro hac vice application pending*

**Counsel to the Appellant**

## **TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| I | THE PARTIES' LEAD PRODUCT AND ENVIRONMENTAL INDEMNIFICATION OBLIGATIONS ARE SEVERABLE AS A MATTER OF NEW YORK CONTRACT LAW | 1 |
| II | THE SEVERABILITY OF THE ENVIRONMENTAL INDEMNIFICATION REGIME FROM THE LEAD PRODUCT INDEMNIFICATION REGIME COMPORTS WITH THE GOALS OF BANKRUPTCY LAW | 8 |
| III | THE AGREEMENTS ARE NOT EXECUTORY | 9 |
| CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

**PAGE(S)**

**FEDERAL CASES**

Budge v. Post, 544 F. Supp. 370 (N.D. Tex 1982) ................................................................. 6

Carlisle Ventures, Inc. v. Banco Espanol de Credito, S.A., 176 F.3d 601 (2d Cir. 1999) ............. 5

Carlson v. Farmers Home Admin. (In re Newcomb), 744 F.2d 621 (8th Cir. 1984)................... 10

In re Chateaugay Corp., 102 B.R. 335 (Bankr. S.D.N.Y. 1989)............................................. 9, 10

In re Drake, 136 B.R. 325 (Bankr. D. Mass. 1992).................................................................. 10

Employees' Ret. Sys. of the State of Haw. v. Osborne (In re THC Fin. Corp.), 686 F.2d
    799 (9th Cir. 1982) ............................................................................................................. 10

In re Grayson-Robinson Stores, Inc., 321 F.2d 500 (2d Cir. 1963) ............................................ 10

In re Idearc, No. 09-31828-BJH-11, 2010 WL 5155665 (Bankr. N.D. Tex. Dec. 14,
    2010) ................................................................................................................................. 6

Kaye v. A.R.E. Distribution & Alpine Records, LLC (In re Value Music Concepts, Inc.),
    329 B.R. 111 (Bankr. N.D. Ga. 2005) ................................................................................ 10

Lazard Freres & Co. v. Crown Sterling Mgmt., Inc., 901 F. Supp. 133 (S.D.N.Y. 1995)............. 1

Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.), 197 F. App'x 285 (5th
    Cir. 2006) ........................................................................................................................... 6

Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.), 209 F.3d 125
    (2d Cir. 2000) ..................................................................................................................... 9

In re Plitt Amusement Co. of Washington, Inc., 233 B.R. 837 (Bankr. C.D. Cal. 1999) .............. 8

Samba Enters., Inc. v. iMesh, Inc., No. 06 Civ. 7660 (DC), 2009 WL 705537 (S.D.N.Y.
    Mar. 19, 2009), aff'd, 390 F. App'x 55 (2d Cir. 2010) ........................................................ 7

In re Spectrum Info. Techs., 190 B.R. 741 (Bankr. E.D.N.Y. 1996)............................................ 9

In re Unishops, Inc., 422 F. Supp. 75 (S.D.N.Y. 1975), aff'd, 543 F.2d 1017 (2d Cir.
    1976) ................................................................................................................................. 10

United Air Lines, Inc. v. HSBC Bank USA (In re United Air Lines, Inc.), 453 F.3d 463
    (7th Cir. 2006) .................................................................................................................... 6

Unisys Corp. v. Combined Techs. Corp., PLC, No. 87 CIV. 1449 (MGC), 1988 WL 78148 (S.D.N.Y. July 19, 1988) .................................................................................... 5

**STATE CASES**

Christian v. Christian, 365 N.E.2d 849 (1977) ............................................................... 6

Nat'l Union Fire Ins. Co. of Pittsburgh v. Clairmont, 231 A.D.2d 239 (N.Y. App. Div. 1997) ............................................................................................................................ 5

The central issue in this appeal is whether two sets of indemnification obligations contained in a series of agreements between the parties are severable.  The Appellee's Brief, however, fundamentally misconstrues this question, and repeatedly fails to provide a cogent response to (or, at times, even to address) the arguments and caselaw set forth in Appellant Millennium Holdings LLC's ("Millennium['s]") brief ("Opening Brief").  The question here is not whether the documents reflecting the parties' promises and obligations have been amended, are integrated, or have been novated – the topics upon which Appellee Akzo Nobel Paints, LLC ("ANP") concentrates its discussion.  Rather, even assuming integrated and novated amended agreements, the question is whether within these documents the parties have included self-contained, severable sets of internally reciprocal rights and obligations.  Because (i) the content, form and context of these documents all provide an affirmative answer to this question (a question which the parties agree this Court reviews *de novo*), and (ii) this answer fully comports with both governing New York law and the statutory objectives of section 365 of the Bankruptcy Code,  11 U.S.C. § 365 ("Section 365"), the Court should rule that the environmental and lead product indemnifications are severable for assumption and rejection purposes (to the extent they are even executory, which ANP's brief fails to demonstrate.)

**I   THE PARTIES' LEAD PRODUCT AND ENVIRONMENTAL INDEMNIFICATION OBLIGATIONS ARE SEVERABLE AS A MATTER OF NEW YORK CONTRACT LAW**

In its Opening Brief, Millennium established that under New York law, a contract is severable if "(1) the parties' performances can be apportioned into corresponding pairs of partial performances and (2) the parts of each pair can be treated as agreed equivalents."[1]  The Opening Brief demonstrated that in form, content, context and course of performance, the

---

[1]  Lazard Freres & Co. v. Crown Sterling Mgmt., Inc., 901 F. Supp. 133, 136 (S.D.N.Y. 1995) (quoting Ginett v. Computer Task Group, 962 F.2d 1085, 1098 (2d Cir. 1992)).

indemnification obligations at issue in the 1986 Purchase Agreement and the 2000 Settlement Agreement are severable under that standard.

In response, ANP argues that the parties' agreements cannot be read to include severable indemnification obligations because: (1) the 2000 Settlement Agreement (and its attachments) are integrated with and amend the 1986 Purchase Agreement; (2) the 1986 Purchase Agreement's indemnification obligations remaining after the 2000 carve-out of the then-existing environmental indemnification obligations are not labeled a "lead indemnification agreement"; (3) the severability clause does not bear on the parties' intent that the provisions of the agreement may be severed from one another and enforced individually; and (4) ANP was not a party to, and thus was not obligated to provide indemnity under the terms of, the 1986 Purchase Agreement, and only accepted that obligation through the Novation Agreement in partial consideration for the 2000 Settlement Agreement and its attachments, including the Environmental Agreement.

ANP's arguments miss the point and are otherwise unpersuasive.

It is not disputed that the 2000 Settlement Agreement and its attachments recite that they are integrated and amend the 1986 Purchase Agreement. But this observation is immaterial to a severability analysis as a matter of law. Put simply: contracts which are integrated may nonetheless be severable under New York law and thus assumed or rejected separately under bankruptcy law.[2] Integration addresses whether and what series of documents constitute the whole of the parties' agreements;[3] that is a different question from whether specific obligations in those documents are severable and thus subject to separate assumption or rejection

---

[2]  See Opening Brief, n. 34.

[3]  See Opening Brief, n. 36

under Section 365. Indeed, even if all the parties' agreements are contained in a single document, and even where that document has been amended, the agreements may be severable. ANP fails to even acknowledge this legal precept.

ANP's argument against severability instead rests on its statement that "Millennium is the beneficiary of a single indemnity that does not specifically reference any particular category of claims"[4] and ANP's exclusive reference to Section 9.3 of the 1986 Purchase Agreement. ANP, however, ignores (a) an adjoining section of that very Agreement (Section 9.1) containing just such a breakdown of claims, and (b) the language of the 2000 Agreements that expressly acknowledges and reaffirms that distinction among categories of claims.[5] As noted in the Opening Brief, the environmental indemnity obligations and the product (including lead) liability indemnity obligations were set forth in separate subsections of the 1986 Purchase Agreement.[6] The division of the two sets of indemnification obligations at issue here was further accentuated by the execution of the 2000 Settlement Agreement, which cleaved certain environmental indemnifications from Section 9 of the 1986 Purchase Agreement but expressly and repeatedly left the remainder of the indemnification obligations provided for there untouched.[7] The relevant point is that following the 2000 Settlement Agreement there are at

---

[4] Appellee Brief at 17.

[5] ANP also ignores the fact that the 1986 Purchase Agreement clearly states that section headings "are to be given no effect in the construction or interpretation of this Agreement." 1986 Purchase Agreement, app. 4 § 10.4 (References to "app." are to the Appendix to the Opening Brief.).

[6] See 1986 Purchase Agreement, app. 4 § 9.1(b) (indemnification for environmental claims) and § 9.1(c) (indemnification for "product safety or liability" claims). Section 9.3, which established the paired "flipover" indemnity from Buyer to Seller, incorporated these subsections individually. See id. at § 9.3.

[7] See, e.g., 2000 Settlement Agreement, app. 5, at § 4 (emphasis added):

> No Prejudice
>
> The matters settled in or pursuant to this Agreement, and/or in or pursuant to any of the agreements set out as exhibits hereto, are without

3

least two self-contained sets of indemnifications. One goes to environmental duties and obligations, as set forth in the Environmental Agreement; the other goes to everything else, including lead product liabilities, which were expressly left untouched and unaffected (as noted in footnote 7).[8] The parties' intent in 2000 to carve out environmental indemnification obligations for separate treatment, while leaving lead product indemnification obligations governed under the terms of the 1986 Purchase Agreement, is not only clear but express.[9]

As explained in the Opening Brief, these two sets of indemnifications are severable because they are – both before and in any event after execution of the 2000 Settlement Agreement – internally reciprocal and self-contained bundles of duties and obligations (precisely what the Ginett/Lazard test for severability requires). Their severability is further evidenced through different substantive treatment (with the parties' environmental indemnification duties and rights re-allocated under the 2000 Settlement Agreement so as to be based on a site-by-site listing, and their lead indemnification duties and rights expressly left in place, unaffected, based

---

> prejudice to the Parties' rights to assert claims or positions as against each other on any matters not settled in or pursuant to this Agreement, and/or in or pursuant to any of the agreements attached as exhibits hereto, <u>such as, but not limited to, with respect to "lead pigment", "lead paint" and/or "lead product" litigation</u>. . . .;

Environmental Agreement, app. 6, at § 1.01(b) (emphasis added):

> For the avoidance of doubt, no provision of this Agreement shall be construed to abrogate, supersede, replace, modify, or otherwise affect in any manner <u>any of the Parties' rights and/or obligations under the Amended Purchase Agreement (including, without limitation, indemnification rights under Section 9 thereof)</u> in respect of any subject matter not specifically addressed in this Agreement;

See also LLA, app. 7, at §10.

[8] These lead product liability claims include the lead paint and lead pigment claims that are at issue in the pending state court proceeding in which Millennium seeks a declaratory judgment and damages against ANP.

[9] Indeed, although ANP inexplicably contends that "lead" is a term <u>not</u> referenced in the agreements (Appellee Brief at p. 3), references to "lead" and "lead product litigation" were <u>express</u>. See 2000 Settlement Agreement, app. 5 at § 4, quoted in footnote 7 above.

4

on the time a claim is asserted); different dispute resolution mechanisms (environmental disputes subject to arbitration, lead indemnification disputes subject to the exclusive jurisdiction of New York State courts); form (with the Environmental Agreement carved out in a separately signed document);[10] and party conduct (Millennium's termination of the LLA in 2002 having no effect on the remaining bargains).[11]

        ANP simply makes no effort to refute these arguments or contest this dispositive point: each indemnification regime is self-contained, allocates 100% of the responsibility (be it for environmental claims on the one hand, or lead, on the other) as between ANP and Millennium, and is expressly separate. To expand on just one example, it is inconceivable that a dispute among the parties as to environmental indemnification responsibilities at a listed site in the Environmental Agreement could relieve either party of its duties under the remaining indemnification obligations that exist under Section 9 of the 1986 Purchase Agreement. Even the adjudicator over such disputes is separate, with an arbitrator for environmental disputes and the court for the remainder. ANP's brief is silent as to the meaning and impact of these differing dispute resolution mechanisms. ANP thus fails to engage in the critical severability analysis of the "intent of the parties as determined by a fair construction of the terms and provisions of the contract itself. . . ."[12] Its admission by silence is revealing.[13]

---

[10] "'[I]n the absence of some clear indication that the parties had a contrary intention, contracts manifesting separate assents to be bound are generally presumed to be separable.'" Nat'l Union Fire Ins. Co. of Pittsburgh v. Clairmont, 231 A.D.2d 239, 241 (1st Dept. 1997) (citing Ripley v. Int'l Rys. of Cent. Am., 8 N.Y.2d 430, 438 (1960)).

[11] See Opening Brief at 19-23.

[12] Unisys Corp. v. Combined Techs. Corp., PLC, No. 87 CIV. 1449 (MGC), 1988 WL 78148, *2 (S.D.N.Y. July 19, 1988).

[13] See Carlisle Ventures, Inc. v. Banco Espanol de Credito, S.A., 176 F.3d 601, 609 (2d Cir. 1999) (holding that appellant waived argument where its reply brief failed to respond to opposing party's contrary assertions and did not otherwise point to any evidence disputing those assertions).

The one indication of severability contested by ANP in its brief was the parties' inclusion of a severability clause in the 1986 Purchase Agreement (and their decision to leave that clause undisturbed in the 2000 Settlement Agreement and its attachments).[14]  Unable to refute the plain language of the 1986 Purchase Agreement, ANP has (i) ignored the New York law cited by Millennium and chosen by the parties to govern their contracts, and instead, (ii) relied on inapposite decisions – from courts outside the Second Circuit and involving contracts interpreted under the laws of jurisdictions other than New York – to downplay the significance of the parties' express intent that portions of the agreement could be performed even if others were invalidated.[15]  As discussed in the Opening Brief, however, "[u]nder New York law, [a severability clause] is evidence that the parties intended to make the Agreement divisible."[16]  The parties' inclusion of express severability language is an important, if not

---

[14] 1986 Purchase Agreement, app. 4 at §10.6.

[15] See United Air Lines, Inc. v. HSBC Bank USA (In re United Air Lines, Inc.), 453 F. 3d 463 (7th Cir. 2006) (Colorado law); Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.), 197 Fed. App. 285 (5th Cir. 2006) (District of Columbia law); Budge v. Post, 544 F. Supp. 370 (N.D. Tex 1982) (Texas law). The one case cited by ANP that discusses the effect of a severability clause under New York law, In re Idearc, No. 09-31828-BJH-11, 2010 WL 5155665 (Bankr. N.D. Tex. Dec. 14, 2010), is also distinguishable.  In Idearc, the court refused to permit a party to a contract which never came into effect to sever certain unfulfilled conditions precedent out of the contract in order to make that contract enforceable.  Idearc bears no relation to the issue here, where a party to a long-consummated purchase transaction and mature indemnification arrangement wishes to sever two self-contained and separate indemnification obligations from each other.

[16] See Christian v. Christian, 365 N.E.2d 849, 856 (1977):

> Whether a contract is entire or severable generally is a question of intention, to be determined from the language employed by the parties, viewed in the light of the circumstances surrounding them at the time they contracted (5 Williston, Contracts [3d ed], § 767, p 629).  Here the parties had a right to and did, by expressly stipulating that if any provision of the separation agreement be held invalid or unenforceable all other shall nevertheless continue in full force, make the agreement within reasonable limits divisible, and there is little room for construction.

(Citations omitted).

conclusive, factor in determining that a contract is severable under New York law.[17] The inclusion of the severability clause (in conjunction with the other, unrefuted indicia of severability) shows that the parties did not consider each provision in the documents to be dependent on the other. Having expressly voiced such a general understanding of lack of dependency, and having bundled their rights and obligations into self-contained, internally reciprocal units, those units are severable and subject to separate assumption or rejection under Section 365.

Finally, ANP's reliance on the Novation Agreement misses the mark. The effect of the Novation Agreement, from its plain language, was to substitute the current parties for their former corporate parents or predecessors as obligors under the 1986 Purchase Agreement. ANP is correct that it directly acquired indemnification obligations by stepping into the shoes of its predecessor through the Novation Agreement. That, however, is beside the point. The indemnification arrangement that ANP indisputably bought into – the shoes it agreed to fill (as it were) – was comprised of two very separate indemnification regimes for two very different types of liabilities. The Novation Agreement did nothing to alter the terms of either the environmental or lead product indemnifications, nor did it express an intent that they be linked. To the contrary, in the companion agreements, ANP and Millennium agreed to change one dramatically (the environmental) but to keep the other (the "lead pigment," "lead paint" and "lead product"-related) separate and completely untouched. For all of the reasons discussed above (as well as in the Opening Brief), these obligations are severable.

---

[17] See Samba Enters., Inc. v. iMesh, Inc., No. 06 Civ. 7660 (DC), 2009 WL 705537, *6 (S.D.N.Y. Mar. 19, 2009) ("the Agreement contains an express severability clause. [It] provides that the 'invalidity of any provision or provisions of this Agreement shall not affect any of the other provisions of this Agreement which shall all remain in full force and effect.' Under New York law, this is evidence that the parties intended to make the Agreement divisible.") (citing Christian, 365 N.E.2d at 856) (emphasis added), aff'd, 390 F. App'x 55 (2d Cir. 2010).

7

## II THE SEVERABILITY OF THE ENVIRONMENTAL INDEMNIFICATION REGIME FROM THE LEAD PRODUCT INDEMNIFICATION REGIME COMPORTS WITH THE GOALS OF BANKRUPTCY LAW

While New York law compels the conclusion that the instant contractual provisions providing for environmental indemnification and lead product indemnification are severable, bankruptcy law compels the conclusion that these severable obligations can be assumed or rejected independently of each other. Assumption or rejection "is governed solely by federal bankruptcy law."[18]

As noted in the Opening Brief at p. 14, the goal under Section 365 is simple fairness: if a debtor accepts the benefits of a bargain, it must accept them *cum onere* – with the burdens that accompany those benefits. To the extent that burdens and benefits can be bundled into "corresponding pairs of partial performance," however, the interests and policy objectives underlying the Bankruptcy Code are served by allowing a debtor to assume one pair of net-beneficial provisions while rejecting another pair of net-burdensome provisions. Hence, the touchstone of what must be assumed or rejected collectively under Section 365 is the internally reciprocal nature of bundled burdens and benefits. To the extent self-contained multiple bundles of such burdens and benefits can be identified in the parties' documents, this federal interest is served by treating them separately.[19]

ANP's brief is devoid of any discussion of this federal objective or how ANP's interpretation of severability comports with that objective. Examining the form, substance and context of these agreements in light of these federal interests shows that the environmental indemnification obligations (carved out of the then-existing indemnification structure in 2000)

---

[18] In re Plitt Amusement Co. of Washington, Inc., 233 B.R. 837, 840 (Bankr. C.D. Cal. 1999) (citations omitted).

[19] See, e.g., id. at 846-47.

8

consist of self-contained reciprocal rights and obligations, as does the remaining (and unchanged) indemnification agreement applicable to lead product liabilities. Accordingly, it is not only proper to sever these obligations from one another under New York law, it is also proper to do so in order to advance the policy objectives underlying the Bankruptcy Code.

### III  THE AGREEMENTS ARE NOT EXECUTORY

ANP misconstrues Second Circuit precedent when it contends that obligations to satisfy indemnity liabilities through the payment of money must be deemed "unperformed" obligations giving rise to an executory contract. As noted in the Opening Brief, the Second Circuit – in caselaw ignored by ANP – has concluded that indemnification obligations arise at the moment when the indemnification agreement is executed, not when money is owed pursuant to that indemnification agreement.[20] Accordingly, ANP is wrong to categorize indemnification obligations to pay money as *per se* unperformed. Further, the other ministerial obligations identified by ANP (i.e., the obligation to notify and tender claims and defend) are not sufficiently material to render the agreements executory, as the caselaw makes clear.[21]

Finally, ANP's efforts to distinguish In re Chateaugay are unpersuasive. Although the debtors in that case had argued, and the court agreed, that the reciprocal payment obligations at issue were "illusory" and "effectuate[d] a wash,"[22] those findings were not necessary to the court's conclusion that the contracts at issue were not executory. In language

---

[20] Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.), 209 F.3d 125, 129 (2d Cir. 2000).

[21] See In re Spectrum Info. Techs., 190 B.R. 741, 748 (Bankr. E.D.N.Y. 1996) (employment and separation agreements not executory where remaining obligations included termination payments, coupled with obligations of confidentiality and noninterference, contingent obligations to defend and indemnify a former officer, and consulting obligations under separation agreement); In re Chateaugay Corp., 102 B.R. 335, 346 (Bankr. S.D.N.Y. 1989) (various remaining obligations other than the payment of money were "*de minimis*", remote, and/or insufficient to render the [contracts] executory in nature").

[22] In re Chateaugay Corp., 102 B.R. at 346.

9

that ANP omits, the court stated: "Even if this Court held that the parties' offsetting monetary obligations did in fact constitute a material remaining performance obligation, it is clear that such obligations merely represent obligations for the payment of money only and are therefore insufficient to make these [agreements] executory."[23]  Moreover, Chateaugay is not an isolated holding – a number of other courts have found that money payments, coupled with obligations that do not go to the essence of the contract, are insufficient to render a contract executory.[24]

## CONCLUSION

For the reasons set forth in the Opening Brief and above, the Integration Order should be reversed.

February 4, 2011
New York, New York

                                          */s/ Christopher R. Mirick*

                                          George A. Davis, Esq.
                                          Andrew M. Troop, Esq.
                                          Christopher R. Mirick, Esq.
                                          Peter Friedman, Esq.
                                          CADWALADER, WICKERSHAM & TAFT LLP
                                          One World Financial Center
                                          New York, New York  10281
                                          Telephone: (212) 504-6000
                                          Facsimile:  (212) 504-6666

---

[23]  Id. at 347 (citing H.R. Rep. No. 95-595, at 347 (1977); Carlson v. Farmers Home Admin. (In re Newcomb), 744 F.2d 621, 624 (8th Cir. 1984); In re Grayson-Robinson Stores, Inc., 321 F.2d 500, 502 (2d Cir. 1963); Employees' Ret. Sys. of the State of Haw. v. Osborne (In re THC Fin. Corp.), 686 F.2d 799, 804 (9th Cir. 1982); In re Unishops, Inc., 422 F. Supp. 75, 78-80 (S.D.N.Y. 1975), aff'd, 543 F.2d 1017 (2d Cir. 1976)).

[24]  In addition to the authority cited in the Opening Brief, see, e.g., Kaye v. A.R.E. Distribution & Alpine Records, LLC (In re Value Music Concepts, Inc.), 329 B.R. 111, 123 (Bankr. N.D. Ga. 2005) (settlement agreement not executory where remaining obligations involved future payment of money and ministerial obligations, including obligation to pay postpetition salaries and surrender premises pursuant to modified lease); In re Drake, 136 B.R. 325, 328 (Bankr. D. Mass. 1992) (employment agreement not executory where employer was obligated to make periodic payments to employee in exchange for employee's obligation not to compete with the employer for 60 months in a prescribed geographical area).

Irwin H. Warren, Esq.
Richard L. Levine, Esq.
Theodore E. Tsekerides, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

William J. Kayatta, Jr., Esq.
Catherine R. Connors, Esq.  (*Pro hac vice* application pending)
PIERCE ATWOOD LLP
One Monument Square
Portland, Maine 04101
Telephone: (207) 791-1000
Facsimile:  (207) 791-1350

***Counsel to the Appellant***

11